ARNOLD, Circuit Judge.
 

 This is an appeal from the judgment of the United States District Court for the District of South Dakota reversing a judgment of the United States Bankruptcy Court entered in an adversary proceeding in bankruptcy. In early 1980, Valley National Bank of Sioux Falls (Valley) lent Randall Bush and his wife, Karen, almost $8,000. The Bushes were unable to pay back the loan and eventually filed a Chapter 7 petition for relief in bankruptcy. Valley then brought suit in the Bankruptcy Court pursuant to 11 U.S.C. § 523(a)(2)(B) (Supp. V 1981),
 
 [1]
 
 objecting to the discharge in bankruptcy of the Bushes’ indebtedness to Valley. Valley alleged that the Bushes had submitted, with the intent to deceive, a materially false credit application upon which Valley had reasonably relied in extending credit to the Bushes. The Bankruptcy Court tried the claim on the merits and entered judgment in favor of the Bushes.
 
 [2]
 
 On appeal the District Court reversed and rendered judgment for Valley. We reverse.
 

 On February 27, 1980, Randall Bush submitted a credit application to Valley loan officer Rick Moon with the “Applicant A” portion of the form already completed in Karen Bush’s name. (The form contained space for information about two applicants, called “A” and “B.”) The application indicated that Karen wanted a $2,800 loan to refinance a loan made by Seminary State Bank (Seminary) of Fort Worth, Texas, to Randall for the purchase of a used car. Karen was seeking this loan purportedly to build up her credit. Along with the credit application, Randall gave Moon Seminary’s credit-rating sheet on the Bushes, which revealed that they had paid off ten installment loans totaling $11,881.66 and had a
 
 *642
 
 current outstanding balance of $5,735.96 on three other loans totalling $6,385.96. Upon receiving these documents, Moon took Randall to his office to discuss the credit application. The testimony regarding what was said at this meeting was highly controverted and gave rise to this action.
 

 Moon testified that Randall led him to believe that the credit application was in fact a joint application by both Karen and Randall, even though the application as initially submitted was clearly an individual application by Karen only. According to Moon, Randall never said anything about obtaining a loan for the purpose of establishing credit in Karen’s name. In Moon’s opinion, Randall appeared eager to establish an account with Valley so that he could obtain loans for his automobile-restoration business and suggested transferring all three of his outstanding loans at Seminary to Valley. Although Moon eventually admitted that it was his idea to transfer the Seminary loans to Valley, Randall approved of the transfer.
 

 Moon took the credit application and began filling in the “Applicant B” portion of the application in Randall’s presence, asking Randall for the information needed to complete the form and writing down his answers in the appropriate blanks. When Moon asked Randall about his occupation and income, Randall allegedly replied that he had been self-employed for four years restoring old cars and earning $24,000 per year. Although Moon was aware of Randall’s indebtedness to Seminary from the Seminary credit-rating sheet, he did not fill in the Applicant B section of the application labelled “Other Debts,” where that information should have appeared. Moon explained that he did not believe it was necessary to copy all the information from the Seminary credit-rating sheet onto the credit application since he considered the Seminary credit-rating sheet a part of the application. Moon’s testimony was unclear on whether he ever specifically asked Randall about his current debts or assumed that his only debts were the outstanding loans from Seminary. If Moon had asked Randall about his other debts, he might have discovered that Randall had a delinquent loan of $2,318.67 from the South' Branch of the National Bank of South Dakota, which he never mentioned to Moon. Moon claimed that he did ask Randall to disclose all his current debts, credit references, open accounts, and bank accounts at the time he handed the credit application to Randall to sign.
 

 Randall’s account of his meeting with Moon contradicted much of Moon’s testimony. Randall maintained that he had repeatedly emphasized to Moon that the credit application was to be in Karen’s name only and for the sole purpose of building up her credit. Randall added his name to the application only after Moon asked him to do so as a convenience to Valley for record-keeping purposes and intimated that the loan was more likely to be approved if Randall’s name was on the application. Randall said that he agreed to sign the application as a favor to Valley with the express understanding the loan would be based entirely on Karen’s credit-worthiness.
 

 According to Randall, when Moon asked about his occupation and income, he replied that he was currently unemployed, but would like to be self-employed doing automobile restoration work. Randall explained to Moon that he had been restoring old cars as a hobby for about four years and believed that if given the money to work with, he could potentially earn $24,000 a year. Randall vigorously denied that Moon ever asked him about his current indebtedness. Randall could not remember whether the “Applicant B” section of the application was even filled in when he signed it, although he believed his signing was a mere formality for Valley’s convenience.
 

 After Randall left, Moon verified the statements in the credit application by contacting a Seminary loan officer and the Credit Bureau. Moon stated that the Seminary loan officer verified that Randall had been self-employed in automobile restoration and that all the loans from Seminary were for that purpose. Both Randall and Karen testified that when they obtained the
 
 *643
 
 loans from Seminary, Randall was a quality-control supervisor at a manufacturing plant earning substantially less than $24,-000 a year. For some reason, the Credit Bureau did not list the delinquent loan from the South Branch of the National Bank of South Dakota.
 

 Based on the credit application and Moon’s credit checks, Valley lent the Bushes $7,186.36 on March 3,1980. The loan covered the principal and interest on all three Seminary loans. Both Karen and Randall signed a disclosure statement, security agreement, and note naming them the “borrowers” or “debtors.” On March 6, 1980, Valley lent Randall $731.93 on his signature to purchase an automobile for restoration. Valley relied on the earlier credit application in granting this loan. Moon emphasized that if he had known about the delinquent loan and Randall’s unemployment, he never would have approved the loan. The Bushes’ financial situation subsequently deteriorated, and eventually they filed a Chapter 7 petition for relief in bankruptcy.
 

 The Bankruptcy Court dismissed Valley’s objection to discharge and declared Randall’s debt dischargeable in bankruptcy. The Court found that because the credit application was only partially complete, it was not such a statement that Valley could reasonably rely upon. The Court also held that Randall had made no false representations with the intent to deceive upon which Valley could reasonably rely. The bankruptcy judge indicated in his oral ruling from the bench that he credited Randall’s testimony over Moon’s regarding the substance of their meeting on February 27, 1980.
 

 On appeal the District Court, employing the “clearly erroneous” standard of review required by Rule 810 of the Bankruptcy Rules of Procedure,
 
 [3]
 
 rejected the factual findings of the Bankruptcy Court and rendered judgment for Valley. The District Court found that Randall made three materially false statements in writing: (1) he was a self-employed automobile restorer; (2) he earned $24,000 a year; and (3) he had no undisclosed debts. The District Court also found, contrary to the Bankruptcy Court’s factual findings, that Valley’s reliance on the credit application was reasonable and Randall possessed the requisite intent to deceive.
 

 We do not agree that the bankruptcy judge’s factual findings should have been reversed as clearly erroneous. The oral testimony on the relevant questions of fact was conflicting. The role of the Bankruptcy Court as the finder of fact was to resolve those conflicts by making a credibility determination. See
 
 In Re Windle,
 
 653 F.2d 328, 330-31 (8th Cir.1981). The Bankruptcy Court heard the testimony of Randall Bush and Rick Moon, observed their demeanor while testifying, and found Randall Bush more credible than Rick Moon.
 

 In reviewing the Bankruptcy Court’s findings of fact, the District Court “sat as an appellate tribunal, not as a finder of fact. The deference owed by appellate courts to finders of fact is at its highest where the issue turns on the resolution of a direct conflict between live witnesses.”
 
 Id.
 
 at 331. What Randall told Valley about his occupation and income is a pure question of credibility, as to which the Bankruptcy Court’s finding should have been accepted. While Randall did not inform Valley about his $2,318.67 delinquent loan from the South Branch of the National Bank of South Dakota, the Bankruptcy Court was within its rights in believing that Moon did not specifically ask Randall what his other debts were. It found, instead, that Moon apparently just assumed that Randall’s only other debts were the outstanding loans at Seminary. Given the competent evidence in the record and the Bankruptcy Court’s crediting of Randall’s testimony, we are not
 
 *644
 
 left with a definite and firm conviction that the Bankruptcy Court erred.
 
 [4]
 

 We reverse the judgment of the District Court and hold the Bushes’ debt to Valley dischargeable in bankruptcy, as found by the Bankruptcy Court.
 

 [1]
 

 . 11 U.S.C. § 523(a)(2)(B) provides, in pertinent part:
 

 (a) A discharge under . .. this title does not discharge an individual debtor from any debt—
 

 (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
 

 (B) use of a statement in writing—
 

 (i) that is materially false;
 

 (ii) respecting the debtor’s . .. financial condition;
 

 (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
 

 (iv) that the debtor caused to be made or published with intent to deceive [.]
 

 [2]
 

 . The Bankruptcy Court dismissed the complaint against Karen Bush on the unopposed motion of her attorney for lack of evidence that she made any false statements on the credit application.
 

 [3]
 

 . Bankruptcy Rule 810, which is similar to Fed. R.Civ.P. 52(a), provides:
 

 Upon an appeal the district court may affirm, modify, or reverse a referee’s judgment or order, or remand with instructions for further proceedings. The court shall accept the referee’s findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses.
 

 [4]
 

 . If an objecting creditor fails to prove every element contained in § 523(a)(2)(B) of the Bankruptcy Code of 1978, the debt in question is dischargeable. See
 
 In re Mann,
 
 22 B.R. 306, 307 (Bkrtcy.E.D.Pa.1982). See generally 3
 
 Collier on Bankruptcy
 
 ¶ 523.09, at 523-51 (15th ed.1982). Because our conclusion that the Bankruptcy Court was within its rights in determining that the debtor made no materially false statements in writing disposes of an essential element of a § 523(a)(2)(B) claim, further discussion of other factual issues is unnecessary.