In re Joseph O'KARMA t/d/b/a
O'Karma Motors, Debtor.

PEOPLES BANK OF
NANTICOKE, Plaintiff,

v.

Joseph O'KARMA t/d/b/a O'Karma
Motors, Defendant.

Civ. No. 83–1587.

United States District Court,
M.D. Pennsylvania.

March 27, 1984.

Mario E. Cipriani, Nanticoke, Pa., for plaintiff.

John J. Thomas, Wilkes-Barre, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

This is an appeal from an Order by the Bankruptcy Court granting a discharge in favor of the debtors over the objections of the Peoples Bank of Nanticoke (Bank).[1] The Bank made four (4) loans to the debtor on separate promissory notes: December 10, 1973; August 11, 1975; January 5, 1976 and July 5, 1978. Summary judgment has been granted to the debtor on the first three of the four loans on the ground that the financial statement in question was submitted subsequent to the issuance of those three loans, i.e., financial statement was submitted on July 7, 1976.

The debtor filed for bankruptcy under the provisions of Chapter 7 of Title 11 of the United States Code on September 7, 1982. Thereafter, the Bank filed an objection to discharge on December 15, 1982, alleging the loans were fraudulently procured by false financial statements issued

---

1. Opinion and Order of Bankruptcy Judge Thomas C. Gibbons dated September 27, 1983,

by the debtor.[2] Bankruptcy Judge Thomas C. Gibbons granted partial summary judgment as to the initial three loans and, after taking testimony, concluded that the $20,000 debt of July 5, 1978, was also dischargeable. The Bank then appealed this finding.

The Bank alleges that the debtor obtained the $20,000 loan by presenting a materially false statement entitled "Ford Dealer Financial Statement." This statement indicated that Joseph O'Karma, t/d/b/a O'Karma Motors, was the owner of certain real estate, which in fact was owned by Joseph O'Karma and his spouse as tenants by the entireties, and listed debtor as owning $796,895 of capital stock in the business. The bank further contends that it reasonably relied on the Ford Dealer Financial Statement and that the debtor's intent to deceive can be presumed.

The Bankruptcy Judge found that debtor was a respected businessman and had dealt with the Bank at least since 1956. He further determined that in 1956 the Bank knew the debtor owned the property in question with his spouse because it granted a postponement of a Bank lien on this property in order to give a first mortgage position to third parties. The debtor offered the Bank other collateral and it was refused. Also, at no time did the Bank request a written loan application appraisal, security agreement, examination of public records or any credit information from public records. The Bankruptcy Judge concluded that the debtor never intended to deceive the Bank with the financial statements and that the Bank, because of its past successful experience with him, never actually relied on the financial statements in granting him the loan.

The burden is on the plaintiff Bank in a case such as this, to establish all elements of § 523(a)(2)(B) by "clear and convincing evidence." *See In re Rodriguez,* 29 B.R. 537, 523 (Bkrtcy.E.D.N.Y. 1983); *In re Whiting,* 10 B.R. 687, 689 (Bkrtcy.E.D.Pa.1981). In *Rodriguez,* the court stated that the definition of "materially false" in a financial statement is that it contains a "substantial or important untruth." 19 B.R. at 523. This is a question of fact. *Id.* The Bank must also establish that it "reasonably relied" on the debtor's misrepresentation, *see Whiting,* 10 B.R. at 689–90, and that the debtor intended to deceive the Bank, *see In re Rickey,* 8 B.R. 860, 862–63 (Bkrtcy.M.D.Fla.1981). A Pennsylvania Bankruptcy Court stated that the purpose of the intent to deceive element is to assure that only the debtor who dishonestly obtained money be punished with nondischarge and that the honest, though mistaken debtor, is protected. *In re Drewett,* 13 B.R. 877 (Bkrtcy.E.D.Pa. 1981).[3]

---

Bankruptcy No. 5–82–00651.

2. The Bank relies on 11 U.S.C. § 523(a)(2)(B), which states in pertinent part:
   *Section 523 Exceptions to discharge.*
   (a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
   (1) * * *
   (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
       (A) * * *
       (B) use of a statement in writing—
       (i) that is materially false;
       (ii) respecting the debtor's or an insider's financial condition;
       (iii) on which the creditor to whom the debt is liable for obtaining such money, property, services, or credit reasonably relied; and
       (iv) that the debtor caused to be made or published with intent to deceive;

3. The legislative history of § 523(a)(2)(B) explains Congressional purpose in enacting this section:
   The premise of the exception to discharge is that a creditor that extended credit based on misinformation or fraudulent information transmitted by the debtor should be protected. The provision, however, has led to abuse in consumer cases, and has frustrated the fresh start goal of the bankruptcy discharge.
   It is a frequent practice for consumer finance companies to take a list from each loan applicant of other loans or debts that the applicant has outstanding. While the consumer finance companies use these statements in evaluating a credit risk, very often the statements are used as a basis for a false financial statement exception to discharge. The forms that the applicant fills out often have too little space for a complete list of debts. Frequently, a loan applicant is in-

In the case *sub judice,* the Bankruptcy Court determined that there was no intent to deceive or defraud on the part of the debtor. As evidence of his good faith the debtor proposed submitting additional collateral to the Bank in the form of insurance policies and bank stock but was told it was not needed. Bankruptcy Judge Gibbons stated:

> there remains a serious question as to the falsity of the statement [in the financial statement]. Ambiguous perhaps, but false is very doubtful.... One must also keep in mind the basic purpose of the document in question. It was designed by the Ford Motor Company obviously for its own purposes. Plaintiff elected to use it voluntarily.... Moreover, the reasonableness of plaintiff's reliance on the statement in question has not been shown. If anything, it may have been overstated in view of debtor's history as a valued customer.

Opinion and Order, Document No. 1 of the Record at 8.

On appeal, the District Court must employ a "clearly erroneous" standard of review as required by Rule 810 of the Bankruptcy Rules of Procedure. *See In re Bush,* 696 F.2d 640, 643 (8th Cir. 1983). This court does not feel that the bankruptcy judge's factual findings have been clearly erroneous. Where there is conflicting oral testimony, as was present here, it is the "role of the Bankruptcy Court as the finder of fact ... to resolve those conflicts by making a credibility determination." *Id.* Bankruptcy Judge Gibbons heard the testimony and found the debtor to be more credible than the Bank's witnesses. Therefore, given the competent evidence in the record and the Bankruptcy Court's crediting of the debtor's testimony, we affirm the decision of the Bankruptcy Court.

Accordingly, an appropriate Order will enter.

structed by a loan officer to list only a few or only the most important of his debts. Then, at the bottom of the form, the phrase "I have no other debts" is either printed on the form, or the applicant is instructed to write the phrase in his own handwriting. In addition, the form states that the creditor has relied on the statement in granting the loan.

However, the creditor often has other sources of information, such as credit bureau reports, to verify the accuracy of the list of debts. Nevertheless, if the debtor files bankruptcy, creditors with these financial statements are in a position to threaten the debtor with litigation to determine the dischargeability of the debt, based on the false financial statement exception to discharge. Most often, there has been no intent to deceive on the part of the debtor, and, as in so many aspects of the creditor-debtor relationship, the debtor has simply followed the creditor's instructions with little understanding of the consequences of his action.

Creditor practices in this area have been so strong that the Bankruptcy Commission recommended that the false financial statement exception to discharge be eliminated for consumer debts. This bill recognizes, however, that there are actual instances of consumer fraud, and that creditors should be protected from fraudulent debtors. It retains the exception, with small modifications. But it also recognizes that the leverage creditors have over their debtors comes not so much at the stage when the loan application is made, but rather when bankruptcy ensues.

U.S.Code Cong. & Admin.News 1978 pp. 5787, 6091-92.