**In re The DREXEL BURNHAM LAMBERT GROUP, INC., et al., Debtors.**

**John HARADA, Appellant,**

v.

**The DBL LIQUIDATING TRUST, Appellee.**

**Nos. 90 Civ. 6954 (MP), 93 Civ. 6131 (MP). Bankruptcy No. 90 B 10421 (FGC).**

United States District Court, S.D. New York.

Nov. 16, 1993.

See also 159 B.R. 420.

Joel C. Feffer, Wechsler Skirnick Harwood Halebian & Feffer, New York City, for appellant John Harada.

George Wailand, Brigitte Lippmann, Cahill Gordon & Reindel, New York City, for appellee DBL Liquidating Trust.

## OPINION

MILTON POLLACK, Senior District Judge:

Appellant John Harada, a former employee of the Debtor, Drexel Burnham Lambert, Inc. ("Drexel"), appeals an order of the Bankruptcy Court, *Conrad, Bankruptcy Judge*, disallowing his claim for his annual bonus and for certain alleged expenses after finding that Appellant did not complete the year's service and that he was not guaranteed the bonus. Appellant claims the Bankruptcy Court erred in receiving certain evidence (which did not prejudice the result) and that the small claims procedure used in the trial of his claim (to which he did not object at trial) violated his due process rights.

Affirmed.

## BACKGROUND

Appellant began work for Drexel in its Tokyo office in February 1987 handling Asian-related business in the area of fixed income sales, real estate, high-yield securities, and capital markets. Appellant claims that the terms of his employment included an annual salary of $300,000 and a guaranteed bonus of 3% of revenue from Asian-related business. Appellant contends that due to his efforts, Drexel's revenues in this area increased from $10 million in 1987 to $22 million in 1988. In 1988, Appellant received a salary of $300,000 plus a $300,000 bonus (3% of 1987's revenues of $10 million). Appellant contends that his employment with Drexel ended in March 1989 and that he performed valuable services for Drexel until this time. Appellant filed proof of claim 6907 seeking (i) reimbursement for $3534.39 for expenses advanced for a Drexel summer intern; (ii) $3850.64 for unreimbursed travel and entertainment expenses; (iii) $600,000 for a 1988 bonus; and (iv) $4645.67 for tax services incurred by Harada while he was a Drexel employee.

For efficiency and case management, Judge Conrad issued a "Preliminary Scheduling Order" to be followed by all litigants in the claims brought before him for hearing. *In re The Drexel Burnham Lambert Group, Inc.*, 90 B 10421 (FGC) (Bankr.S.D.N.Y.). In this order, he directed the DBL Liquidating Trust, the successor to the Drexel Debtors, to transmit a copy of the Preliminary Scheduling Order to all claimants with claims remaining unadministered as of July 1, 1992 (with stated exceptions) and to all other parties in pending adversary proceedings. The order directed that Part VII of the Federal Rules of Bankruptcy Procedure should apply to all contested matters except as modified in the order. For each claim, the order fixed a chronology of dates for a mandatory settlement period, discovery by the claimant, a second mandatory settlement period, discovery and motions by Debtors and other defendants in adversary proceedings, depositions, completion of discovery and claimants' motions, mediation proceedings and submission of discovery disputes. Appellant's claim was originally scheduled according to this procedure by the Bankruptcy Court's Second Scheduling Order, dated October 20, 1992, which incorporated the Preliminary Scheduling Order.

A hearing of a claim would be set only after the parties completed all the pretrial procedures mandated in the Preliminary Scheduling Order. Upon conclusion of the pretrial procedures, a so-called Trailing Docket order would issue, governing the hearing, trial, and estimation of contested matters. The Trailing Docket order provides the procedures for trial preparation, briefing, exhibits, witness, and conduct of trial.

To expedite resolution of small claims, Judge Conrad also initiated a small claims procedure involving claims of less than $1 million. By an administrative order, he transferred claims previously subject to the preliminary scheduling order to small claims proceedings (the "Small Claims Order"). In this case, his order read as follows:

This Court has previously held small claims hearings to adjudicate contested matters in these jointly administered Chapter 11 cases with respect to disputed claims. Based on that experience and on this Court's knowledge of these Chapter 11 cases, the Court has determined that disputed claims in amounts less than $1 mil-

lion can be efficiently but fairly adjudicated by means of small claims hearings before the Court. The Court finds that such procedures will result in demonstrable cost savings to the Debtors, claimants and all creditors, while at the same time protecting the rights of the Debtors and claimants. THEREFORE, IT IS HEREBY ORDERED:

1. Disputed claims in the amount of less than $1 million which previously have been made subject to this Court's Preliminary Scheduling Order may be made subject to small claims adjudication upon the Debtors' sending by certified mail a copy of this Order, with the relevant claimant name and claim number(s) entered in the caption above.

2. The Debtors shall serve such order on a claimant at least twenty-one (21) days prior to any small claims hearing for that claim.

3. Upon the Debtors' service of this order upon a claimant, all obligations of the Debtors and claimant pursuant to the Preliminary Scheduling Order shall be suspended until further order of this Court, except that to the extent that any claimant has complied with the discovery requirements of Phase 3 of the Preliminary Scheduling Order, then the Debtors, if they have not yet done so, shall comply with their discovery obligations under Phase 5 of the Preliminary Scheduling Order at least seven (7) days prior to the small claims hearing.

Dated: April 22, 1993

/s/ Francis G. Conrad
United States Bankruptcy Judge

*In re The Drexel Burnham Lambert Group, Inc.,* 90 B 10421 (FGC) (Bankr.S.D.N.Y. Apr. 22, 1993). In order to process claims for less than $1 million efficiently, this Small Claims Order relieved claimants from the procedures and scheduling obligations of the Preliminary Scheduling Order. The Judge's Small Claims Order requires that a copy of the Order be served on a claimant subject to the order at least twenty-one days prior to the hearing, thus giving the claimant time to object to Small Claims Proceedings or to

move to be returned to the timetable of the Preliminary Scheduling Order.

A Small Claims Order was duly served on John Harada's counsel at least twenty-one days before the hearing. At that time, the parties had already engaged in document and interrogatory discovery under the Second Scheduling Order. No objection was voiced. The subsequent proceedings before Judge Conrad proceeded under the terms of the Small Claims Order. The appropriate pretrial proceedings, interrogatories and document requests, were completed, and the case was reached for trial on June 25, 1993.

At the opening of the hearing, the Court announced that "this is a small claims proceeding, but hearsay rules do not apply, nor do the normal rules of evidence, so you have a lot of freedom because we want to get this over with." The attorney for Harada, Mr. Feffer stated, "I understand that. I want to apologize. I am not familiar with the procedures here. This is my first time." The Court focused attention on the issue to be tried. It stated, "I want to know how he knows that he wasn't terminated and why he is entitled to a Bonus." Counsel for the claimant responded "I could ask it that way, but that would be too simple." The Claimant was then examined by his counsel without interruption, and he was cross-examined, again without interruption. Additional witnesses were called and were examined, and no restriction was placed upon either side.

At the conclusion of the testimony, the Bankruptcy Court announced its decision, sustaining in part and denying in part Drexel's objections to Harada's claim: the Bankruptcy Court allowed Harada's claims for travel and entertainment expenses and for the cost of tax services incurred while he was a Drexel employee. The Court found, however, that a bonus was not guaranteed and that Harada's employment was terminated in November 1988. The Court disallowed Harada's claims for a 1988 bonus and for reimbursement of expenses Harada advanced on behalf of a Drexel summer intern.

On appeal, Harada claims the following errors: (i) the Court's small claims proceeding violated his due process rights; (ii) the Court improperly failed to adhere to the

Federal Rules of Evidence; and (iii) the Court's finding that Harada was not entitled to a 1988 bonus was clearly erroneous.

## ANALYSIS

■ Appellant contends that the Bankruptcy Court's Small Claims Order violated his right to due process of law under the Fifth Amendment. U.S. CONST. AMEND. V. Appellant complains that the Small Claims Order allowed Drexel to decide unilaterally when claims would be subject to Judge Conrad's Small Claims Procedure, was vague as to what procedures the "small claims adjudication" would entail, and did not give Appellant sufficient notice of the nature of the proceeding to allow Appellant to prepare his case.

■ As a preliminary matter Appellant waived any due process objections to the Judge's scheduling procedure. Appellant never objected to the procedure and never moved to have his claim restored to the more extensive case management applicable to mega-claims. Appellant contends that this appeal is his first opportunity to object to the procedure because the small claims agenda was case management prescribed *ex parte* by the judge and was not appealable as a final order under 28 U.S.C. § 158(a). Apart from the question of whether there is any substance to that contention, Appellant could have objected, moved to have his claim restored to the more complex Preliminary Scheduling Order, or sought clarification of the small claims procedure if indeed he misunderstood or was aggrieved by it.

Moreover, Appellant's arguments are substantively unavailing. "Due process requires the provision of reasonable notice to those parties whose claims are about to be discharged: 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Waterman Steamship Corp.*, 157 B.R. 220, 221 (S.D.N.Y.1993) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). *See also In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1144 (2d Cir.1993) (in approving debtor's proposed settlement of claims against former officers, holding that due process mandates that "no person may be deprived of life, liberty, or property by an adjudicatory process without first being afforded notice and a full opportunity to appear and be heard, appropriate to the nature of a given case."); L. KING, COLLIER ON BANKRUPTCY, ¶ 9014.05, at 9014–5 (15th ed. 1993) ("[t]he formal procedural approach for adversary proceedings [need not be applied to] contested matters where the issues may be relatively simple or where expedition is necessary.")

The Small Claims Order meets the requirements of due process. The order is merely a case management tool of the Bankruptcy Court to manage the numerous small cases on its docket. The Small Claims Order obligated a Debtor to mail a copy of the order to affected claimants at least twenty one days prior to any small claims type hearing. Thus, Appellant was on notice and could have objected to the expedited process or moved to restore his claim to the Judge's full-scale Scheduling Order. In the small claims atmosphere, Harada was represented by counsel, was allowed significant discovery, freely submitted oral and documentary evidence, presented witnesses, cross-examined adverse witnesses, and presented oral argument. Harada had his day in court. Because the small claims proceedings included such extensive procedural protections, the small claims procedure did not deprive Appellant of his due process rights. *See, e.g., In re Adair,* 965 F.2d 777, 779–80 (9th Cir. 1992) (per curiam) (holding bankruptcy court procedure of accepting written narrative testimony satisfies due process where "[t]he procedure is essential to the efficient functioning of the crowded bankruptcy courts.").

■ The fact that the small claims procedure was mechanically initiated by a mailing by the Debtor of the Judge's procedural plan does not render the procedure defective. Like the Preliminary and Second Scheduling Orders establishing timetables for pretrial procedures, the Small Claims Order was prepared and signed by the Bankruptcy Court

*sua sponte* for the convenience and best interests of all concerned. The Bankruptcy Court, in its discretion, determined the case management of smaller claims which did not require extensive pre-trial preparation. Such claims could be readily identified and given an expedited schedule under the Small Claims Order. Bankruptcy Rule 9014, governing contested matters such as objections to proofs of claims, grants the Bankruptcy Court considerable discretion in determining how hearings on proofs of claims will be conducted under § 502(b) of the Bankruptcy Code. *See Wachovia Bank of Georgia v. Apex Tech of Georgia, Inc.*, 144 B.R. 649, 653 (S.D.N.Y.1992) (under Rule 9014 governing contested matters, "the Bankruptcy Court possesses considerable discretion in determining the nature of the hearing"). The small claims procedure does not give a Debtor any unfair advantage, and, aside from Appellant's complaint that the Bankruptcy Court disregarded the Federal Rules of Evidence (discussed below), Appellant points to no difference between the small claims procedure and a more formal trial. Appellant's due process rights were not prejudiced.

■ Appellant contends that the Bankruptcy Court refused to apply the Federal Rules of Evidence ("FRE") in the Small Claims Proceedings in violation of both Bankruptcy Rule 9017 and Fed.R.Evid. 1101(a), which make the FRE applicable to bankruptcy proceedings. During the hearing, the Court did state that the rules of hearsay would not be technically observed: "This is an informal proceeding and the hearsay rules, etc. ...; This is a small claims proceeding, but hearsay rules do not apply

nor do the normal rules of evidence." However, Appellant fails to point to any prejudice from evidence admitted by the Bankruptcy Court that does not conform to the requirements of the FRE.

■ Appellant objects to the admission of an inter-office memorandum dated December 14, 1988 written by a Drexel personnel administrator, Kathy Fitzgerald. The memorandum is addressed to Larry Platoni, an office manager in Drexel's Tokyo office and recites the terms of Harada's separation as specified by Andy Morse, the head of Harada's group who negotiated Harada's termination. Ms. Fitzgerald, but not Mr. Morse, testified at the bankruptcy hearing.[1] The memorandum states:

> I received a note from Andy with reference to [Harada]. Andy listed the terms of his separation as follows:
>
> 1) He will receive a salary of $150,000 through 3/31/89.
>
> 2) He must submit moving expenses bills to yourself and Larry Pomerantz to be reviewed for payment.
>
> 3) He must remove his personal belongings from the office by 1/1/89.
>
> 4) We pay his housing until 3/31/89.
>
> If John is unable to find a job the terms will be reviewed. The only other item Andy mentioned was the loss John incurred on his NY real estate. This matter will be handled by Mr. Kantor directly.

Appellant contends that this memorandum represented hearsay and was not admissible under the FRE 803(6) business records exception.[2] Appellant contends that Drexel

---

1. Morse was not called a witness by either side. Appellant contends that since Harada notified Drexel that Morse had personal knowledge of Harada's employment contract and Drexel failed to produce him as a witness, the Court should have drawn an inference that Morse's testimony would be damaging to Drexel. However, because Morse was no longer an employee of Drexel and equally available to both parties, no inference is justified. *See United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir.1988) (an adverse inference is appropriate if " 'a party has it particularly within his power to produce witnesses whose testimony would elucidate the transaction' and fails to produce such witnesses. ..."); *D.S. Magazines, Inc. v. Warner Publisher Services Inc.*, 640 F.Supp. 1194, 1201 (S.D.N.Y.1986) (a former

employee is not peculiarly available to his former employer).

2. FRE 803(6) provides that the following shall not be excluded by the hearsay rule:

    **Records of Regularly Conducted Activity.** A *memorandum, report, record, or data compilation*, in any form, of acts, events conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified

failed to establish that the preparation was part of its "regular practice" or that the document was "made at or near the time" of Ms. Fitzgerald's alleged conversation with Morse about Harada's termination. Appellant claims that because Ms. Fitzgerald testified that she learned of Harada's termination in October 1988, the memorandum of December 14, 1988 was not contemporaneous with her receipt of information.

■ To reverse a ruling to admit evidence on hearsay grounds, Appellant must establish both an abuse of discretion, *Saks Int'l. Inc. v. M/V "Export Champion"*, 817 F.2d 1011, 1013–14 (2d Cir.1987), and that the ruling affected a substantial right. FRE 103(a); Bankr.Rule 9005 (incorporating Fed.R.Civ.P. 61 harmless error rule); 28 U.S.C. § 2111 (1988).

The Court properly admitted the Fitzgerald memo as a business record. The memorandum was between personnel officers regarding the status of an employee and the facilitation of his departure and was a business record made in the ordinary course of business. The memorandum was written reasonably within the time frame that Fitzgerald learned of Harada's termination which was to be fully effected three months later. *See Missouri Pacific RR Co. v. Austin*, 292 F.2d 415, 422 (5th Cir.1961) ("The requirement that the regular course of business included a timely recording is not to be applied with any technical niggardliness. Dealing with business records, account must be taken of practical considerations. [Timely recording] will depend on the nature of the information recorded ..."). Furthermore, the memorandum was written well before Harada filed any claim for a bonus. Thus, the Court did not abuse its discretion in finding that the memorandum fell within the business records exception to the hearsay rule. There was sufficient independent evidence to support the Bankruptcy Court's finding of fact that Harada was not entitled to a bonus for 1988; and the admission of the memo did not affect any "substantial right." FRE 103(a); Bankruptcy Rule 9005 (incorpo-

rating Fed.R.Civ.P. 61 harmless error rule); 28 U.S.C. § 2111 (1988).

■ Appellant next contends that the Bankruptcy Court's finding of fact that Appellant was not entitled to a 1988 bonus was clearly erroneous. The Court ruled:

[O]bviously someone was unhappy with Mr. Harada's performance and in line with that, Mr. Harada was asked to leave and it is clear that this termination was going to be effective March 31st, 1989, there is no doubt about it ... [E]ither October 1st or November 1st, Mr. Harada was no longer an employee. Therefore, he was no longer entitled to a bonus and that's the ruling of the Court.

*In re The Drexel Burnham Lambert Group, Inc.*, 90 B 10421 (FGC) (Bankr.S.D.N.Y. June 25, 1993).

A reviewing District Court will not set aside a Bankruptcy Court's finding of fact unless they are clearly erroneous. Bankruptcy Rule 8013. As the Supreme Court stated

Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

．　　　．　　　．　　　．　　　．

... when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Anderson v. City of Bessemer*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

There were two major issues of factual dispute: (i) the terms of Harada's employment—whether the bonus was guaranteed; and (ii) the date of Harada's termination.

■ Appellant contends that the terms of his employment were a fixed salary of $300,-000 and a guaranteed bonus of 3% of the revenues generated by his department, re-

witness, unless the source of the information or the method or circumstances in the prepa-

ration indicate lack of trustworthiness.

gardless of the actual date of his termination. The Court found, however, that a bonus was discretionary. This finding is supported by the testimony of the personnel administrator Ms. Fitzgerald who testified that Harada's bonus was at the discretion of the management. Although Ms. Fitzgerald did not negotiate Harada's employment contract or severance, she was familiar with Drexel's practices which were that Drexel did not give guaranteed bonuses. Moreover, the testimony of Joseph Vitanza, the senior trust advisor of DBL Liquidating Trust and former president of Drexel Burnham Lambert, Inc., was that

> The general practice was any employee who was discharged before a bonus was to be distributed did not receive that bonus.

It is clear that the Court did not credit the contrary testimony of the witnesses Harada or Kaplan.[3] Where the Court rejects the credibility of witnesses, deference "to finders of fact is at its highest." *In re Bush,* 696 F.2d 640, 643 (8th Cir.1983). Because there was sufficient evidence that the bonus was discretionary, the Court's finding was not clearly erroneous.

The Court also found that Appellant was terminated in October or November 1988. This finding is supported by the following evidence: (i) Drexel's Tokyo office manager Larry Platoni's testimony that he had not seen Harada in the Tokyo office after fall 1988; (ii) Fitzgerald's memorandum of December 1988 and testimony stating that Harada was to receive a reduced salary and was to clear his office of personal belongings by January 1, 1989; and (iii) a letter from Harada's accountant (Arthur Andersen) to the Japanese tax authorities stating that Harada departed Japan in November 1988.

There was ample evidence from which to resolve the issues of credibility with respect to the date of Harada's termination. The Court credited Drexel's evidence and did not credit Harada's evidence, and this decision is entitled to deference by a reviewing court. *See Anderson,* 470 U.S. at 574–75, 105 S.Ct. at 1511–12. The Bankruptcy Court's finding

3. Kaplan and Harada previously worked together at Banque Paribas, and it was Kaplan who hired Harada away from that firm to Drexel.

that Harada's employment was terminated in November 1988 was not clearly erroneous.

We have examined the other assignments of error and find them devoid of substance.

Accordingly, the Bankruptcy Court's order is

**AFFIRMED.**

Kaplan "involuntarily resigned" from Drexel in 1989 and did not receive a bonus in 1989.