DAMIAN SERVICES CORPORATION,
Plaintiff–Appellant,

v.

FREEDOM PERSONNEL, INC., Personal Care, Inc., Key Bank of New York, N.A., et al., Defendants–Appellees.

No. 94–CV–1543.

United States District Court, N.D. New York.

Oct. 31, 1995.

MacKrell, Rowlands Law Firm, Albany, NY (Paul A. Levine, of counsel), for Plaintiff.

Cooper, Erving Law Firm, Albany, NY (Craig H. Norman, of counsel), for Defendant Key Bank of New York.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

## I. INTRODUCTION

This matter comes on appeal from a decision of the Bankruptcy Court of the Northern District of New York. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a).

Defendant Freedom Personnel, Inc. ("Freedom") filed for relief under Chapter 11 of the Bankruptcy Code on December 15, 1993 (Case No. 93–14694). Defendant Per-

sonal Care, Inc. ("Personal Care") filed for relief under Chapter 11 of the Bankruptcy Code on December 21, 1993 (Case No. 93–14768). **Plaintiff Damian Services Corporation ("Damian")** originally commenced this action January 24, 1994, seeking a determination pursuant to 11 U.S.C. § 502 and Bankruptcy Rule of Procedure 7001 that Damian's security interest was a valid and prior security interest in the accounts receivable of defendant Freedom beginning June 22, 1993, and that the accounts receivable of Freedom were not covered by the general security agreement of March 2, 1990, between **defendant Key Bank of New York, N.A. ("Key Bank")** and defendant Personal Care. In addition, Damian sought a determination that the accounts receivable at issue were property of the Freedom Chapter 11 bankruptcy estate.

This case was originally brought by Damian against Freedom, Personal Care, Key Bank, Nurse Finders, Inc., Marie D. Takes, as executrix of the estate of Rafael Roberti, and the Internal Revenue Service. Prior to trial, the case was dismissed as to all parties other than Freedom, Personal Care, and Key Bank. After extensive discovery, the case was brought on for preliminary hearing before the Hon. Thomas Waldron, sitting by designation, on September 8, 1994. Judge Waldron indicated there that he intended to adjudicate the case fully at trial scheduled September 9, 1994. Damian has now appealed from the trial result. The following constitutes the Court's findings of fact and conclusions of law with respect to the issues raised.

## II. BACKGROUND

The Bankruptcy Court found that both Key Bank and Damian have perfected security interests in the accounts receivable of Personal Care and Freedom, respectively. The perfection occurred as a result of appropriate filings in the local and state offices. However, the assets in question, accounts receivable and their proceeds, were found to be assets in the Personal Care bankruptcy estate. Key Bank's security agreement attached to these assets at the time the accounts receivable or their proceeds come into

being. As a result, under §§ 9–306(2) and 9–312 of the New York Uniform Commercial Code ("U.C.C."), the first in time priority rule provides that Key Bank's security interest prevails over Damian's. According to the Bankruptcy Court, while Damian has a properly perfected interest in the assets of this case, this interest only attaches to accounts receivable that would exist after Key Bank has been paid in full.

The Bankruptcy Court further ruled that Personal Care is the only entity that is licensed to provide health care services in accordance with New York Public Health Law § 3605. Moreover, at all times, the sole principal in control of both debtors only did business under the Personal Care name or some variation of that name. Personal Care was found to be the only entity that did business with the third-party end users whose debts became the accounts receivable. The evidence revealed that Personal Care located the ultimate health care aides that were involved, trained and monitored them, verified their medical records, and provided evidence of their licenses from the State of New York to those who contracted for Personal Care's services. The Bankruptcy Court found that Freedom, in contrast, did nothing to create the accounts receivable that are the subject of this dispute.

## III. DISCUSSION

### A. STANDARD OF REVIEW

■ This Court sits as an appellate court for bankruptcy court proceedings. As a result, the findings of fact by the court below will not be disturbed unless clearly erroneous, while conclusions of law are reviewed *de novo*. *Contemporary Mortgage Bankers, Inc. v. High Peaks Base Camp, Inc.*, 156 B.R. 890, 893 (N.D.N.Y.1993); *Langlois v. United States*, 155 B.R. 818, 819 (N.D.N.Y. 1993). Moreover, Bankruptcy Rule 8013 provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside, unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses."

## B. BASIS FOR APPEAL

Damian appeals from the bankruptcy court's decision alleging: a) it did not receive a fair trial; b) the bankruptcy court applied an incorrect legal analysis; and c) the bankruptcy court failed to consider relevant evidence on ownership of the accounts receivable in dispute. The Court will deal with each of these issues in turn.

### 1. Trial Fairness

■ Damian points to sixteen separate excerpts from the pretrial hearing and subsequent trial to support its contention that Judge Waldron did not approach the case with an open mind (App.'s Brief at 6–9). Specifically, Damian argues that Judge Waldron had prejudged the case and failed to allow or consider arguments in favor of Damian's position.

A review of the pretrial and trial transcripts, however, reveals no evidence of unfair or partial conduct on the part of Judge Waldron. As appellant willingly concedes, Judge Waldron indicated at the pretrial hearing that he would "hear all the persuasive arguments," and he was "clearly not making a determination today." (September 8 transcript at 10). However, appellant relies on comments such as "that's the way I'm going" and others of similar wording to claim that Judge Waldron had prejudged the issues before him. Appellant's arguments on this point are without merit. Rather than showing a lack of receptivity on the part of the bankruptcy court, the comments cited are more appropriately viewed as attempts by the Court to elicit more substantive arguments in support of appellant's contentions, while at the same time warning appellant of the apparent weakness of its position on the eve of trial. Thus the Court concludes that Damian's charges of receiving an unfair trial are not supported on the record below.

### 2. The Bankruptcy Court's Legal Analysis

■ Appellant next claims that the Bankruptcy Court was incorrect in characterizing the dispute as one covered by the provisions of Article 9 of the U.C.C. According to Damian, the court should instead have considered the possibility of a fraudulent conveyance by Personal Care to Freedom of its business opportunities and other assets. However, under *Garfinkle v. Levin,* 460 F.Supp. 670 (S.D.N.Y.1978), where petitioners were not improperly prohibited from raising issues below, a district court should not burden a bankruptcy court by remanding matters that should have been raised in the first instance. Moreover, in this case, appellant conceded at trial that the issue of fraud was not before the court, and indicated that that issue would be dealt with outside the confines of the tribunal. (September 9 transcript at 82–83). Appellant's argument that this constitutes preclusion by the Bankruptcy Court of the issue of fraudulent conveyance consequently must be rejected.

Damian also urges on appeal that the Bankruptcy Court did not have an adequate factual predicate to find that Freedom was without statutory authority to provide services to the underlying account debtors. In essence, Damian is pleading two separate arguments, neither of which is grounds for reversal of the Bankruptcy Court. First, Damian contends that Freedom is not subject to certain New York licensing requirements. New York law provides that

[a]fter April first, nineteen hundred eighty-six, no home care services agency which is engaged in providing, directly *or through contract arrangement,* nursing services, home health aide services, or personal care services shall be operated without a license issued by the commissioner in accordance with the standards set forth in this section....

N.Y.Pub.Health Law § 3605(1) (emphasis added). Damian admits that its debtor, Freedom, is not licensed as a home care services agency, but contends that under Section 3605 such a license is not necessary for the service it provides. However, under *Mauceri v. Chassin,* 156 Misc.2d 802, 594 N.Y.S.2d 605 (Sup.Ct.1993) "the construction given to a statute by the agency charged with implementing it should be upheld if not irrational." *Id.* 594 N.Y.S.2d at 606–07. As a result, Section 3605 was interpreted in *Mauceri* to apply to the business of providing lists of home health aides to clients,

despite the fact that the plaintiff did not actually provide or supervise those services.

No reason is presented by Damian for finding that the Bankruptcy Court's findings are inconsistent with *Mauceri* or the undisputed facts presented. Moreover, the evidence is undisputed that Key Bank's debtor, Personal Care, is a licensed home care services provider under Section 3605. Thus, the underlying transactions that generated the accounts receivable in this dispute are capable of being created only through the existence of Personal Care.

 Damian's second contention is that Freedom is being prevented from collecting payment for services provided prior to issuance of its license. However, as mentioned above with respect to fraudulent transfer, it would be an improper burden on the Bankruptcy Court to remand the case for trial of matters that should have been raised in the first instance. *Garfinkle v. Levin,* 460 F.Supp. 670 (S.D.N.Y.1978). Since Damian did not previously raise the issue of whether Freedom was in fact in the process of obtaining the proper license from the state to provide services to third party end users, this court will not now find that Damian was improperly precluded from arguing this theory and as a result should be granted a remand. Under this Court's limited scope of review, the findings of the Bankruptcy Court present no clear error and should be upheld.

### 3. Evidence Concerning Account Ownership

 Damian's last argument on appeal is that the Bankruptcy Court did not consider evidence that the account debtors understood they were dealing with a new entity, Freedom, and no longer with Personal Care. This is contrary to the Bankruptcy Court's express reliance on all evidence presented, both documentary and testimonial. (Trial transcript at 147). The fact that the Bankruptcy Court chose to give more weight to one witness than another, or to give little weight to certain documents, is no basis for reversal. It is well settled that "deference to finders of fact is at its highest" where the credibility of witnesses is involved. *In re Drexel Burnham Lambert Group, Inc.,* 160

B.R. 729, 736 (S.D.N.Y.1983) (quoting *In re Bush,* 696 F.2d 640, 643 (8th Cir.1983)).

## IV. CONCLUSION

For all the above reasons, the decision of the Bankruptcy Court is hereby AFFIRMED.

**IT IS SO ORDERED.**