In the Matter of G. David BROYLES; Emily Broyles, Debtors.

**CITIZENS BANK OF MARYLAND, Plaintiff–Appellant,**

v.

**G. David BROYLES; Emily Broyles, Defendants–Appellees.**

No. 94–1831.

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1995.

Decided June 13, 1995.

**ARGUED:** John Sears Simcox, Simcox & Barclay, Annapolis, MD, for appellant. James J. Fitzgibbons, Thomas H. Price, III, P.A., Silver Spring, MD, for appellees.

Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and SPROUSE, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge SPROUSE wrote the opinion, in which Chief Judge ERVIN joined. Judge NIEMEYER wrote a concurring opinion.

## OPINION

SPROUSE, Senior Circuit Judge:

We review the district court's judgment affirming the bankruptcy court's allowance of the discharge of a debt incurred by personal guarantors of a corporate indebtedness. David Broyles and Emily Broyles, his wife, were indebted to Citizens Bank of Maryland (Citizens) as guarantors of commercial loan notes executed by corporations of which they were principal stockholders. Citizens contended below and argues here that § 523(a)(2)(B) of the Bankruptcy Code bars discharge of the debt because the Broyles induced the bank to rely on two of their personal financial statements that were materially false. Holding that Citizens had not met its burden of showing reliance on those personal financial statements, the bankruptcy court ruled that the debt was dischargeable. Concluding that the bankruptcy court's factual findings were not clearly erroneous, the district court affirmed that ruling. We agree with the district court and likewise affirm.

I

Aside from the conclusory testimonial assertions of reliance by Jerry Shearer, Citizens' vice president and primary trial witness, the essential facts are undisputed. The Broyles were principal stockholders of three corporations: Haass & Broyles Excavators, Inc., Haass Equipment Rental, Inc., and EMI Excavation, Inc. Since the early 1970s, the corporations borrowed periodically from Citizens Bank. Typically, the loans were evidenced by commercial loan notes executed by both the corporations and the Broyles. Generally, the Broyles signed both as officers of the corporations and as personal guarantors. Citizens routinely received annual personal financial statements from David Broyles.

Continuing this financial pattern, the three corporations jointly borrowed $800,000 from Citizens on September 7, 1989, a debt that ultimately generated the litigation involved in this appeal. At that time, the corporations executed a note in the amount of $500,000, repayable over a five-year term. Additionally, they obtained a line of credit for $300,000, signing a note due on demand or on September 7, 1990.

David executed these two notes on behalf of Haass & Broyles Excavators, Inc. and Haass Equipment Rental, Inc. Emily signed as an officer of EMI Excavation, Inc. Both the Broyles signed as guarantors.

Testimony before the bankruptcy court established that the two loans, in effect, restructured approximately $600,000 of preexisting debt and provided an additional $200,000 in new credit. Although prior loans from Citizens had been unsecured, the new $500,000 term loan was secured by "various pieces of construction equipment with an appraisal value of not less than $667,000."

Before finalizing the loan, Citizens sent a commitment letter to the Broyles. The letter required that both David and Emily personally guarantee the loans, but did not say that a personal financial statement was needed. However, prior to executing the Loan Guaranty Agreement, David submitted to Citizens a signed statement reflecting his financial condition as of January 1, 1989. It

is unclear from the record whether Citizens required this statement and, if so, why it accepted a statement dated eight months before the loan. On this January 1989 financial statement, David represented that he owned certain real estate which, in fact, was owned by EMI Excavation. David possessed only 9% interest in EMI while Emily owned 55% interest.

In September 1990, the three corporations jointly renewed the $300,000 line of credit they had obtained the year before. In August 1990, in connection with the application for the extension, Shearer requested an updated financial statement from the Broyles. At that time, David was hospitalized, recovering from a heart attack. Emily, who had never before prepared a financial statement, "updated" the 1989 personal financial statement, for the most part simply copying information from it onto a new form. Although she added a piece of property valued at $80,000 to the assets column and added the $58,000 mortgage on that property and a $9,000 car loan to the liabilities column, Emily did not include $766,434 she and David owed Emily's parents for stock they had purchased from them a year earlier, nor did she include the value of that stock. She also did not indicate that the obligation to her parents, which required monthly payments of $6,166.90, was then six months in default.

While still in the hospital, David added his signature to Emily's on the 1990 statement, without reviewing the document. On behalf of the corporations, the Broyles also signed a new note dated September 7, 1990. Citizens renewed the $300,000 line of credit for a period of eight months.

In early 1991, both the $500,000 term note and the renewed $300,000 line of credit went into default for nonpayment. Citizens filed an action in Maryland state court to collect on the debts, both against the three corporations as makers and against the Broyles as guarantors. Shortly thereafter, David and Emily, together with two of the corporations, Haass & Broyles Excavators, Inc. and Haass Equipment Rental, Inc., filed for voluntary bankruptcy. In 1993, Citizens obtained a Maryland judgment against EMI, the lone non-bankrupt maker, for moneys owed on both the term note and the line of credit.[1] Citizens initiated this action in the United States Bankruptcy Court, seeking to obtain a declaration that the amounts assessed in the EMI judgment were non-dischargeable against the Broyles under § 523(a)(2)(B) of the Bankruptcy Code.[2] Citizens argued that discharge should be barred because the Broyles had falsified their financial statements, specifically by representing that David owned the EMI real estate and by omitting the $766,434 debt to Emily's parents.

After a bench trial, the bankruptcy court dismissed Citizens' complaint. The court

---

**1.** The Maryland court awarded Citizens $253,063.04, plus interest, on the term note and $411,341.06 on the renewed line-of-credit. In the present litigation, Citizens maintains that these amounts are nondischargeable against David. Since Emily signed the 1990, but not the 1989, personal financial statement, Citizens concedes that only the $411,341.06 debt is potentially non-dischargeable against her. Citizens claims this amount is nondischargeable against Emily for the same reasons it claims that both debts are nondischargeable against David.

**2.** Section 523 provides, in pertinent part, that an individual debtor is not discharged

... from any debt—

.    .    .    .    .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

.    .    .    .    .

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive ...
11 U.S.C.A. § 523(a) (West 1993).

had no trouble finding the Broyles' financial statements to be materially false written descriptions of their financial condition published, at least in part, with the intent to deceive. It concluded, however, that to successfully bar a discharge, a creditor must establish all four elements of § 523(a)(2)(B) and that the bank had not demonstrated its reliance upon the contents of the Broyles' financial statements in advancing the 1989 loans or extending the line of credit in 1990.

## II

We agree with the bankruptcy court's analysis of the statute. *See In Re Rotman,* 133 B.R. 843, 844 (S.D.Tex.1991) ("The language of § 523(a)(2)(B) is explicit; reasonable reliance is one of four criteria each of which must be met for a discharge to be denied based on this exception."); *In Re Spilotros,* 117 B.R. 691, 692–93 (M.D.Fla. 1990) ("All elements, including reasonable reliance, must be proven by Plaintiff for a debt to be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B)."); *In re Bush,* 696 F.2d 640, 644 n. 4 (8th Cir.1983) ("If an objecting creditor fails to prove every element contained in § 523(a)(2)(B) of the Bankruptcy Code of 1978, the debt in question is dischargeable.").

■ The sole issue, then, is whether the bankruptcy court clearly erred in finding that Citizens did not rely upon the Broyles' financial statements. *In re Morris Communications NC, Inc.,* 914 F.2d 458, 467 (4th Cir.1990) (court of appeals reviews bankruptcy court's factual findings for clear error); Bankruptcy Rule 8013.[3] Under the clearly erroneous standard, a reviewing court will not reverse "simply because it is convinced that it would have decided the case differently." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). A finding of fact is clearly erroneous only when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. United States Gypsum Co.,*

333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574, 105 S.Ct. at 1511.

■ Applying this standard to the bankruptcy court's findings, we cannot say that the court was clearly erroneous.

*A. The Broyles' 1989 Financial Statement*

The bankruptcy court based its finding that Citizens had not relied upon the Broyles' 1989 financial statement on several factors. Initially, it noted that the commitment letter from Citizens to the Broyles "was conditioned only upon the approvals being personally guaranteed" by David and Emily. That letter made no mention of a personal financial statement.

Next, the court found that, even without the personal guarantee, the arrangement was beneficial to Citizens. The restructuring replaced a non-term loan with a term loan and supplanted an unsecured obligation with one secured by nearly $700,000 of corporate collateral. From this, the court concluded that Citizens had "sufficient incentive to make these loans for business reasons only, without relying upon the ... net worth of the guarantors."

The bankruptcy court also premised its conclusion on Citizens' 1989 loan submission sheet, essentially an internal memorandum summarizing the loan and the debtors' finances. This document indicated that the rationale for approving the loan was a "long term deposit [and] loan relationship" and "earnings performance." As the primary and secondary sources of repayment, the loan submission sheet listed "contract revenues" and "liquidation of assets," respectively. The court concluded that Citizens had relied on the parties' long term financial relationship and the corporations' assets, rather than the Broyles' personal assets.

In addition to the foregoing factors, which tend to refute Citizens' claim of reliance on

---

**3.** Citizens asserts that the clearly erroneous standard is only partially applicable here because the bankruptcy court applied the wrong law. Specifically, Citizens claims the court saddled it with the burden of proving it relied *primarily* upon the Broyles' financial statements, a heightened standard from that provided in § 523. Our thorough review of the court's opinion convinces us that the court did not require a showing of primary reliance. Because the court applied the correct law, we review only for clear error.

the 1989 financial statement as a whole, the bankruptcy court focused on the specific circumstances surrounding each of the Broyles' two misrepresentations. With regard to David's asserted ownership of the EMI real estate, the court relied on evidence that David had written a note to Shearer in 1987, stating that, on his 1986 financial statement, he was listing the EMI real estate as his own.[4] The bankruptcy court found David's note "ambiguous" and concluded that David had intentionally misrepresented his holdings, essentially by relying on the likelihood that, in the future, the note would be buried in Citizens' files while his annually-submitted financial statements would not reflect the fact that EMI actually owned the property. Indeed, David's 1989 financial statement did not reference EMI's ownership of the property. The court, however, found that Citizens' loan submission sheet again belied its claim of reliance. That document includes the notation, "real estate owned by EMI Realty(?)." The question mark, the bankruptcy court posited, indicates that Citizens at least suspected David did not own the property outright. If Citizens were relying on David's ownership of the property, the court concluded, this uncertainty would have led the bank to inquire further into the matter.

In connection with the Broyles' omission of their debt to Emily's parents, the bankruptcy court recognized that Shearer, Citizens' primary witness, did not testify that he or the bank had relied in 1989 upon the resulting understatement of the Broyles' liabilities. For that matter, Shearer could not have plausibly made such a claim. The financial statement he had before him was dated January 1, 1989, while the debt to Emily's parents was not incurred until August of that year.

## B. *The Broyles' 1990 Financial Statement*

Much of the court's reasoning concerning the 1989 financial statement applies with equal force to the 1990 statement. The court noted that Citizens' rationale for granting the extension, as stated on the 1990 loan submission sheet, was still the parties' long-term relationship. Furthermore, it concluded that, in 1990 as in 1989, Citizens was on inquiry notice regarding the true ownership of the EMI real estate.

The bankruptcy court also considered the fact that the 1990 transaction constituted only an extension of the 1989 line of credit. Moreover, it observed that the 1990 loan submission sheet "recommended that the line [of credit] be renewed for [eight months] . . ., at which time we will begin reviewing annually based on yr end financial report." The court found that the financial reports referred to were those of the corporations, rather than the Broyles' personal financial statements. It opined that Citizens' interest in the corporations' year end reports further buttressed its finding that the bank was concerned peripherally, if at all, with the contents of the Broyles' personal financial statements.

The bankruptcy court recognized that Citizens' 1990 loan submission sheet differed in at least one important respect from the 1989 version. As in 1989, the primary source of repayment was listed as "contract revenues." This time, however, Citizens indicated that the secondary source of repayment was "guarantors [sic] assets." However, the court decided that this factor was not determinative. The loan submission sheet estimated the Broyles' net worth at $1,752,800, while the 1990 financial statement gave a figure of $3,490,586. If Citizens had relied on the financial statement, the court reasoned, it would not have listed the Broyles' net worth as only half that represented in the statement.[5]

## III

In our view, the bankruptcy court was not clearly erroneous in concluding that Citizens did not rely on misrepresentations made by

---

4. The note stated: "Also I have placed the EMI Corporation into the Real Estate Owned column because although it is a corporation, it is all real property and the value is based upon current estimated market value for the buildings and land."

5. Subtracting, as did the bankruptcy court, the $1,110,000 value of the EMI property from the Broyles' stated net worth yields a balance of $2,380,586, still substantially higher than Citizens' estimate. Going further and subtracting the $766,000 owed to Emily's parents yields a

the Broyles. The judgment of the district court is, therefore, affirmed.

*AFFIRMED.*

NIEMEYER, Circuit Judge, concurring:

In connection with the renewal of a corporate line of credit, Citizens Bank required an updated financial statement of the corporation's principals, David and Emily Broyles, who were guarantors on the line. The Broyles submitted a financial statement which deliberately omitted a $766,434 debt owed to Emily's parents and the fact that the $6167 monthly payments on the debt were six months in default. The bankruptcy court found that Emily Broyles, who prepared the statement, deliberately intended to deceive the bank in order not "to upset the apple cart at a time her husband was in the hospital and cause trouble with the business." The court also found the omission material. It concluded, however, that despite the testimony of the bank officer, who stated that the bank would not have extended the credit if it had known of the omitted facts, the bank did not in fact rely on the financial statement of the guarantors in extending the line of credit to the corporation. The court found that that bank was looking primarily to the corporation's business and assets to repay the loan and relied only on the fact that the corporation's principals supplied guarantees without relying on their particular financial strength.

This deception by the guarantors, who were also principals in the corporation borrowing the money, is precisely the type of conduct which bars a discharge in bankruptcy. *See* 11 U.S.C. § 523(a)(2)(B). And it is troubling that it should not be found to prejudice the debtor in this case. Banks have good reason for demanding evidence of assets when lending money, and any conclusion that the bank in such circumstances did not actually rely on the statement would imply that there is "little point in banks requiring

financial statements." *McGhee v. First National Bank of Ferrum,* No. 92–2296, 1993 WL 143574, at *3 (4th Cir. May 6, 1993) (unpublished). "Our legal system expects that individuals will make truthful representations on financial statements, and allows others to reasonably rely on those representations." *Id.* If the financial statement involved in this case had been that of the borrower, as distinguished from the guarantor, I would think that we would be required to find reliance as a matter of law.

However, this case contains facts which indicate that the bank was looking primarily to the corporation's business and assets and to the fact that its principals had given personal guarantees, but not necessarily to the particular financial strength of the guarantors. With some hesitation, therefore, I concur in the opinion on the limited basis that we cannot conclude that the factual finding was clearly erroneous.*

---

total of $1,626,586, only slightly less than Citizens' $1,752,800 calculation.

* My reluctance is also based on the fact that the Broyles purposefully *omitted* information, and the difficult burden that such an omission places on the lender to prove that it relied on the *absence* of specific data in making its decision. I would agree with the First Circuit's view that:

> Likelihoods are about all that can be expected when the question is what the bank would

have done five years ago if faced with a disclosure that did not occur.... After all, if a financial statement is materially false and intended to deceive, then a showing that the creditor "relied" upon it arguably requires no more than that the creditor took it into account and gave it weight.

*In Re Goodrich,* 999 F.2d 22, 25 (1st Cir.1993).