In re HOOKER INVESTMENTS, INC., L.J. Hooker Corporation, Inc., et al., Debtors.

The TRADE CREDITOR GROUP, Edwards & Angell, and Corrs Chambers Westgarth, Appellants,

v.

L.J. HOOKER CORPORATION, INC., et al., and the Australian Bank Group, Appellees.

No. 93 Civ. 3556 (CSH).

United States District Court, S.D. New York.

Nov. 2, 1995.

---

Edwards & Angell (Sandra A. Riemer and Gabriel Del Virginia, of counsel), New York City, for Appellants.

Proskauer Rose Goetz & Mendelsohn (David I. Goldblatt and Harry W. Lipman, of counsel), New York City, for Appellees L.J. Hooker Corp., et al.

Coudert Brothers (Thomas J. Weber and Maryann Gallagher, of counsel), New York City, for Appellees Australian Bank Group.

## OPINION

HAIGHT, Senior District Judge:

In this voluntary reorganization proceeding commenced under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* a group of creditors and the two law firms representing it appeal from an order of the bankruptcy court (Tina L. Brozman, *Judge* ), to the extent that the order rejected claims for compensation asserted by the group and the firms as administrative expenses under 11 U.S.C. § 503(b)(4). For the reasons that follow, the order of the bankruptcy court is affirmed.

## Background

The debtors in this case are L.J. Hooker Corporation, Inc. ("Hooker") and several of its subsidiaries. The first of several Chapter 11 petitions was filed on August 9, 1989. Bankruptcy Judge Tiná L. Brozman has supervised the case since its inception.

Hooker, an American corporation, was a subsidiary of Halwood Corporation Ltd., formerly known as Hooker Corporation Limited ("Hooker Australia"), an Australian corporation which with its subsidiaries was the subject of provisional liquidation under Australian insolvency laws.

The bankruptcy court in this district has approved a plan of reorganization for Hooker and its petitioning subsidiaries. As to Hooker Australia, the Australian court has approved a series of "schemes of arrangement" which, we are told, are analogous to plans of reorganization under the Bankruptcy Code of the United States.

The American debtors were a group of companies primarily involved in the businesses of developing real estate, shopping malls, and residential property, and operating retail department store chains. Two former landmark New York stores, B. Altman & Co. and Bonwit Teller, Inc., were among the Hooker-controlled entities.

The variety of Hooker's business operations gave rise to several categories of creditors. The "Trade Creditor Group" is the category pertinent to this appeal. Trade creditors extended credit to one or more of the debtors in the retail group of Hooker enterprises. The other categories of creditors embrace institutional lenders to Hooker or Hooker Australia under varying terms and conditions. Those categories of creditors are known as the "Australian Bank Group," the "U.S. Bank Group," and the "U.S. Non–Retail, Non–Negative Pledge Creditors." It is not necessary to the resolution of this appeal to describe how these categories came by their sobriquets.

On August 30, 1989, the U.S. Bankruptcy Trustee for this district appointed a Creditors' Committee to represent the unsecured creditors. The original Creditors' Committee was comprised of fifteen members: six culled from the Trade Creditor Group, and nine from institutional creditors belonging to one or another of the other groups. Changes were made in the original Committee lineup, but they are not material to this appeal.

The trade creditors' claims aggregated about $70,000,000, but there were thousands of creditors in the group, some with relatively small claims. A time came when the Trade Creditor Group decided to apply to the bankruptcy court for the appointment of the American firm of Edwards & Angell ("E & A") and the Australian firm of Corrs Chambers Westgarth ("Corrs") as special counsel to represent the interests of that group. The Australia Bank Group and the Trustee opposed that application and Judge Brozman denied it at a hearing on October 11, 1990. The Trade Creditor Group moved for reconsideration. That led to a chambers conference before Judge Brozman on January 16, 1991. At its conclusion all parties and the bankruptcy court agreed, in Judge Brozman's words, that "E & A was retained as special counsel to the Trade Creditors for the limited purpose of representing the Trade Creditors through confirmation of a plan, in connection with negotiating and participating in the drafting of such plan in the United States and schemes of arrangement (Schemes) in the Australian Insolvency Proceedings." Opinion dated December 30, 1992, Rec. D. 112, at slip op. 3. Corrs fell within the Australian component of that agreement.

After a plan of reorganization was approved, E & A and Corrs applied to the bankruptcy court for compensation for professional services. The applications fell into two categories. For services rendered prior to January 16, 1991, the date of the firms' retention as special counsel to the Trade Creditor Group, the group and the firms claimed under § 503(b) of the Bankruptcy Code. For post-retention services, they claimed under § 330.

Specifically, E & A sought an award of $166,508 in fees and $29,736 in expenses from October 3, 1990 through January 15, 1991; and additional post-retention amounts which I need not detail because they are not at issue in this appeal. Corrs sought an award

of \$A37,534.75 in fees and \$A6,572.65 in expenses for the period October 19, 1990 through December 20, 1990. Corrs also made a claim for post-retention services, but again, that claim is not at issue in the appeal.

Rather, the appeal is concerned only with the bankruptcy court's order disposing of the pre-retention compensation claims asserted under § 503(b). In her opinion dated December 30, 1992, Judge Brozman awarded E & A \$16,105 in fees and \$3,750 in disbursements. She awarded Corrs A\$7,500 in fees and A\$1,643 in disbursements. Judge Brozman entered an order implementing that opinion. Dissatisfied with those awards, the Trade Creditor Group, E & A and Corrs appeal.

### Discussion

Section 503 of the Bankruptcy Code provides for the allowance of "administrative expenses." The amount of administrative expenses is a significant issue in bankruptcy liquidation or reorganization proceedings, because they are paid first, before any distribution to creditors.

Section 503(b) provides that a creditor who has made "a substantial contribution" to a bankruptcy case shall receive an administrative expense amount equal to its reasonable fees and necessary expenses and, if applicable, its counsel's reasonable fees and expenses. 11 U.S.C. § 503(b)(3)(D) and (b)(4).

■ The Code does not define "substantial contribution." It is frequently judicially construed. At heart, however, whether or not a creditor's conduct has made a substantial contribution is a question of fact. *See In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir.1986) ("The inquiry regarding a substantial contribution is one of fact."). On appeal, the bankruptcy court's allowance or disallowance of fees under § 503(b) will be affirmed unless its "factual findings were clearly erroneous" or "the fee awards were not determined under the appropriate legal standards." *In re United States Lines, Inc.*, 1991 WL 67464 at *5 (S.D.N.Y. April 22, 1991) (Cedarbaum, *J.*). While the bankruptcy court's application of rules of law will be reviewed under a *de novo*

standard, the court has "wide discretion" to determine both "[t]he *allowance* of administrative expenses" under § 503(b)(3)(D) and "the appropriate *amount* of expenses to be awarded" under that section. *In re Lister*, 846 F.2d 55, 56 (10th Cir.1988) (emphasis in original). That discretion is justified by the bankruptcy judge's superior knowledge of the case, gleaned from the sort of close supervision Judge Brozman has given to the important and complex case at bar. Accordingly this Court will review her partial "denial of the application[s] for administrative expenses using an abuse of discretion standard," *Lister* at 57, considering in the process whether her findings of fact are clearly erroneous and her application of legal standards appropriate.

■ On these several issues, the present appellants bear the burden of persuasion, just as in the bankruptcy court they "had the burden of proving [that] a 'substantial contribution'" was conferred by their conduct. *Lister* at 57.

■ In the case at bar, the bankruptcy court demonstrated its awareness of the appropriate legal standards. They are discussed at slip op. 4–6 of the opinion below, with ample citations to pertinent cases. To summarize, Judge Brozman recognized that administrative expenses should be kept to a minimum to maximize creditors' recovery from the estate; that attorneys must generally look to their own clients for payment; that extensive participation by counsel in a case is insufficient in and of itself to justify compensation by the estate; and that creditors face a particularly difficult burden in passing the "substantial contribution" test because they are presumed to act primarily in their own interests.

Judge Brozman's opinion at slip op. 5 cites case law for the relevant factors in determining whether an applicant under § 503(b) has made a substantial contribution in a bankruptcy case: whether the services in question were provided to benefit all parties in the case; whether the services conferred a direct, significant and demonstrably positive benefit upon the estate; and whether the services were duplicative of services performed by others. A more recent case

phrases the first factor as "whether the services were rendered solely to benefit the client or to benefit all parties in the case." *In re Buckhead America Corp.*, 161 B.R. 11, 15 (Bankr.D.Del.1993).

As a leading text notes, "the circumstances of the particular application will have to govern application of section 503" to the services in question. 3 *Collier on Bankruptcy* (15th ed., 1995) at p. 503–53. In the case at bar, Judge Brozman accurately noted with respect to the E & A firm's services that "the major portion of the additional $166,828 sought pursuant to § 503(b) is for services arising from or relating to the efforts of the Trade Creditors to retain special counsel at a cost to be borne by the estate, rather than the group's individual members." Opinion at slip op. 7. The bankruptcy court drew a distinction between the Trade Creditor Group's efforts to retain special counsel to protect the group's interests, and the law firms' post-retention services contributing to the plan process, for which the E & A firm alone billed approximately $500,000 as an administrative expense. Contrary to appellants' contention, Judge Brozman acted well within her discretion in concluding that the firms' earlier services, resulting in their appointment by the bankruptcy court as special counsel, primarily benefitted the Trade Creditor Group rather than "all parties in the case," and so for the most part did not qualify for compensation under § 503(b). Nor is there any basis in the record for disturbing the particular allocations made by the bankruptcy court between which pre-retention services were compensable under § 503(b) and which were not.

I have considered all of appellants' arguments, and find them to be without merit. Because the bankruptcy court's analysis of the relevant legal standards was appropriate, its factual determinations were not clearly erroneous, and its conclusions lay well within its discretion, the order appealed from is affirmed.

SO ORDERED.