**W. Clarkson McDOW, Jr., United States Trustee,**

v.

**OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF CRIIMI MAE INC.**

**In re Criimi Mae Inc., et al.**

**No. CIV A DKC 99–1959.**

United States District Court,
D. Maryland.

Oct. 12, 1999.

■■■■■■■■■■■■■

Julie Ann Alicia Mack, Office of the U.S. Trustee, Greenbelt, MD, for W. Clarkson Mcdow, Jr., Appellants.

Dennis B. Auerbach, Michael St. Patrick Baxter, Covington & Burling, Washington, DC, Stanley J. Samorajczyk, Akin, Gump, et al., Washington, DC, for Official Committee of Equity Security Holders of CRIIMI MAE, Inc., CRIIMI MAE, Inc., Appellees.

## MEMORANDUM OPINION

CHASANOW, District Judge.

This is an appeal from an Order of the bankruptcy court directing a chapter 11 debtor in possession to reimburse the members of the official committee of equity security holders for a liability insurance policy premium in the amount of $92,700. The bankruptcy court held that the insurance premium was an allowed administrative expense under 11 U.S.C. § 503(b)(3)(F). For the reasons set forth below, the court shall AFFIRM the Order of the bankruptcy court.[1]

## I. *Background*

CRIIMI MAE Inc. (the "Debtor") is a commercial mortgage company in the business of acquiring, originating, securitizing and servicing commercial mortgages and mortgage-related assets. On October 5, 1998, it filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to 11 U.S.C. § 1102, the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee"), consisting of five members, on October 16, 1998. After determining that the appointment of an equity committee would be beneficial to the interests of the Debtor's shareholders,[2] an official committee of equity security holders (the "Equity Committee"), consisting of seven members, was appointed on November 24, 1998.

Shortly after their appointment, three of the seven members of the Equity Committee resigned. In declarations filed with the bankruptcy court, two of the three resigning members, one of whom was the Equity Committee chairman, stated that they resigned due to concerns they might be sued for their actions as committee members. One noted that his concern was heightened by the fact that numerous shareholder suits had been instituted against the management of the Debtor.

On March 23, 1999, the Equity Committee moved under section 363(b)[3] of the Bankruptcy Code for an order directing the Debtor to pay the premium for an insurance policy that would indemnify the Equity Committee members for their acts, errors and omissions in the performance of their statutory duties. Alternatively, the Equity Committee sought a declaration that any expense incurred by the committee members to purchase such a policy would be an allowed administrative expense under section 503(b)(3)(F).[4] In con-

1. Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Bankr. Rule 8012.

2. At the time of filing the petition, the Debtor had over forty-eight million shares of common stock outstanding and approximately 3,000 shareholders.

3. This section of the Bankruptcy Code provides that a bankruptcy court may authorize the use of estate property other than in the ordinary course of business when some business justification for doing so exists. *See* 11 U.S.C. § 363(b)(1); *In re Continental Air Lines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Naron & Wagner, Chartered,* 88 B.R. 85, 88 (Bankr.D.Md.1988) (mem.).

4. This section, together with section 507 of the Bankruptcy Code, provides that the actual, necessary expenses of a member of an official committee incurred in the performance of the committee's statutory duties are

nection with this motion, the Equity Committee submitted declarations of two of the four remaining committee members. Howard Landis, co-chair of the Equity Committee, stated that he would "strongly consider" resigning from his position if liability insurance were not put in place to protect the committee members from nuisance suits and the substantial legal fees that would be required to defend against such actions. Similarly, Charles Koehler indicated that he would consider resigning if the Equity Committee could not obtain appropriate insurance coverage.

The Trustee filed an objection to the Equity Committee's motion. Shortly thereafter, the Equity Committee submitted for approval a stipulation entered into by the Debtor, the Equity Committee and the Creditors' Committee regarding the use of estate funds to purchase insurance coverage. The stipulation provided that the Debtor would purchase a $2 million liability insurance policy for the Equity Committee for a premium of $90,000, plus $2,700 state tax, and a $2 million liability policy for the Creditors' Committee for a premium of $62,000, plus $1,860 state tax. Both policies would cover a two-year period.

Both the Debtor and Creditors' Committee were initially opposed to the insurance. The Debtor was willing to agree to the expenditure, although not convinced of the need for the insurance or the legal basis for it, because it "very much" wanted to keep the Equity Committee in place and to avoid the costs associated with resolving a conflict over the allowance of such an expense. The Debtor believed that an active Equity Committee was important for the protection of the interests of the Debtor's equity security holders. The Creditors' Committee felt the expenditure was an inappropriate use of estate funds, but was concerned about the costs of litigating the issue. The Creditors' Committee ultimately agreed to the stipulation in light of the fact that both committees would receive liability coverage.

A hearing on the motion for approval of the stipulation was held on May 18, 1999. After hearing arguments from the Trustee, the Debtor, the Creditors' Committee and the Equity Committee, the court ruled that the cost of purchasing the policy for the Equity Committee would be an allowed administrative expense under section 503(b)(3)(F). However, the court found that the cost of purchasing a similar policy for the Creditors' Committee would not be allowed as an administrative expense.

This appeal by the United States Trustee followed. The issue before the court is whether the bankruptcy court erred in holding that an insurance premium paid by the members of the Equity Committee would be an allowed administrative expense under 11 U.S.C. § 503(b)(3)(F).

## II. *Analysis*

### A. *Mootness*

 The Equity Committee argues that this appeal is moot because the Trustee did not move to stay the bankruptcy court's Order, and the Debtor has already paid the insurance policy premium. According to the Equity Committee, a bankruptcy appeal must be dismissed as moot when the appealing party does not move to stay the bankruptcy court's order, the order has been implemented, and there is no practical way for the appellate court to reestablish the status quo ante. The court disagrees. An appeal is not moot simply because the appellate court cannot return the parties to the status quo ante. A dismissal on mootness grounds is required only when implementation of an order has created, extinguished, or modified rights "to such an extent that effective judicial relief is no longer practically available." *Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc.*, 841 F.2d 92, 95 (4th Cir.1988) (citations omitted); *see Mills v. Green,* 159 U.S. 651, 653, 16

entitled to administrative priority. *See* 11 U.S.C. § 503(b)(3)(F), 507(a)(1).

S.Ct. 132, 40 L.Ed. 293 (1895) (holding that an appeal must be dismissed as moot when events occurring during the pendency of the appeal render it "impossible" for the court to grant "any effectual relief whatever" to a prevailing party). An appeal is not moot if the court can "fashion *some* form of meaningful relief." *Church of Scientology v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992).

In this case, the Trustee seeks a pro rata refund of the insurance policy premium. The policy provides that it may be canceled by the Equity Committee upon written notice to the insurer. Thus, if the court were to reverse the bankruptcy court's Order, the bankruptcy estate could recover a significant portion of the premium. The availability of this remedy is sufficient to prevent this case from being moot.

B. *Equity Committee's Insurance Policy Premium as Administrative Expense Under 503(b)(3)(F)*

1. *Standard of Review*

■ The findings of fact by the bankruptcy judge may only be set aside if they are clearly erroneous. Bankr.Rule 8013. A finding of fact is clearly erroneous "only when the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" *In re Broyles,* 55 F.3d 980, 983 (4th Cir.1995) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Thus, a reviewing court will not reverse the bankruptcy court's findings of fact "simply because it is convinced that it would have decided the case differently." *Id.* (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). By contrast, the bankruptcy court's conclusions of law are reviewed de novo. *See In re Bulldog Trucking, Inc.,* 147 F.3d 347, 351 (4th Cir. 1998); *In re Three Flint Hill Ltd. Partnership,* 213 B.R. 292, 297 (D.Md.1997) (mem.).

2. *Section 503(b)(3)(F)*

■ Section 503(b)(3)(F) of the Bankruptcy Code provides:

(b) After notice and a hearing, there shall be allowed administrative expenses ... including ... (3) the actual, necessary expenses ... incurred by ... (F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee.

11 U.S.C. § 503(b)(3)(F). Subsection (F) was added to section 503(b)(3) by the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, §§ 110, 108 Stat. 4106, 4113. Prior to this amendment, the Bankruptcy Code was silent regarding whether members of official committees appointed in chapter 11 cases were entitled to reimbursement for expenses incurred in the course of performing their committee duties, and the courts were split on the question of allowing reimbursement. *Compare, e.g., In re George Worthington Co.,* 921 F.2d 626, 634 (6th Cir.1990) (finding that reimbursement of official committee's administrative expenses, while not expressly provided for in the Code, was "implied in the overall scheme for reorganization and in the legislative history of the Code and its amendments"), *and In re Brendle's Stores, Inc.,* 164 B.R. 523, 527 (Bankr.M.D.N.C.1994) (mem.) (holding official committee's expenses reimbursable under section 503(b)(1)(A) as an actual and necessary expense of preserving the estate), *with In re Automotive Nat'l Brands, Inc.,* 65 B.R. 412, 414 (Bankr.W.D.Pa.1986) (mem.) (finding no statutory basis for payment of expenses of official creditors' committee under section 503).

■ Appellant's initial argument in support of reversing the bankruptcy judge's Order focuses on the phrase: "in the performance of the duties of such committee." The Trustee attempts to draw a distinction between expenses incurred "in the performance of" committee duties, and those incurred "in connection with" the performance of committee duties or in an-

ticipation of a failure to fulfill those duties. He argues that expenses for things like travel, lodging and meals incurred by official committee members while attending committee meetings fall into the former category, and are allowed under subsection (F). He contends, however, that the premium for an insurance policy to indemnify committee members for their acts, errors and omissions in performing committee duties falls into the latter categories, and is not allowed under subsection (F).

■ The court does not believe this is a distinction that Congress intended to draw. The plain language of subsection (F) merely establishes a requirement that the expense incurred by the committee member be causally connected to his performance of committee duties. There is no basis in the language of subsection (F) or its legislative history for distinguishing between specific kinds of committee member expenses. If the expense would not have been incurred but for an individual's service on a section 1102 committee, it may be reimbursable under section 503(b)(3)(F). *See In re County of Orange*, 179 B.R. 195, 200 (Bankr.C.D.Cal.1995) (mem.) ("[U]nder § 503(b)(3)(F), a member of a committee may be reimbursed for reasonable expenses incurred *in connection with* a member's performance of committee duties." (emphasis added)). The expense of obtaining the liability insurance policy satisfies this basic requirement, and is therefore an expense "incurred in the performance of the duties" of the Equity Committee.

■ Merely establishing a causal connection, however, does not establish a right to reimbursement. Subsection (3) of the statute requires that committee member expenses be "actual," and "necessary" to the performance of committee duties. 11 U.S.C. § 503(b)(3). The determination of whether an expense is "actual and necessary," and thus allowed as an administrative expense, is left to the sound discretion of the bankruptcy judge. *In re DP*

*Partners Ltd. Partnership*, 106 F.3d 667, 673 (5th Cir.1997); *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir.1988); *In re Lister*, 846 F.2d 55, 56 (10th Cir.1988) (per curiam); *In re Hooker Inv., Inc.*, 188 B.R. 117, 120 (S.D.N.Y.1995); *In re Dakota Indus., Inc.*, 31 B.R. 23 (Bankr.D.S.D. 1983) (mem.). This broad discretion "is justified by the bankruptcy judge's superior knowledge of the case," derived from the close supervision he must give to a complex chapter 11 reorganization such as this one. *Hooker*, 188 B.R. at 120. This court will therefore review the bankruptcy court's determination that the insurance policy premium was an actual and necessary expense entitled to administrative priority using an abuse of discretion standard. *See In re Economy Lodging Sys., Inc.*, 234 B.R. 691, 693 (6th Cir. BAP 1999); *In re Sierra Pac. Broad.*, 185 B.R. 575, 577 (9th Cir. BAP 1995); *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir.1994); *Lister*, 846 F.2d at 56–57; *In re Lykes Bros. Steamship Co.*, 221 B.R. 881, 886 (Bankr.M.D.Fla.1997); *Hooker*, 188 B.R. at 120. An abuse of discretion occurs only when the bankruptcy court relies upon clearly erroneous findings of fact or uses an erroneous legal standard. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir.1999). However, even if a bankruptcy court applies the correct legal principles to adequately supported facts, the discretion of the bankruptcy judge "is not boundless and subject to automatic affirmance." *Id.* (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 506 (4th Cir.1977)). "This court is obligated to review the record and reasons offered by the [bankruptcy] court and to reverse if the 'court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Id.* (quoting *Wilson*, 561 F.2d at 506). With these principles in mind, the court considers the finding by the bankruptcy judge that the insurance premium

was an actual, necessary expense entitled to administrative priority.

The bankruptcy court held that the insurance premium would be allowed as an administrative expense under section 503(b)(3)(F) if the Equity Committee could show three things: 1) that the Equity Committee was beneficial to the Debtor's reorganization process; 2) that the Equity Committee could not function without the expenditure for the insurance policy; and 3) that the expenditure was reasonable under the totality of the circumstances of the case. As to the first element, the court noted that there are literally thousands of equity security holders disbursed throughout the country who, collectively, have hundreds of millions of dollars invested in the Debtor. Based on these facts, the court found that a committee of equity security holders would be beneficial to the reorganization process by ensuring that these investors will have a voice in the plan formulation and confirmation process.

With regard to the second element, the court was "convinced by the evidence" that the committee would not function without the insurance policy in place. This evidence included the fact that three of the committee's seven members had resigned, and that two of the three gave declarations stating they resigned due to concerns they might be sued for their actions as committee members. There were also declarations from two current committee members, Howard Landis, co-chair of the Equity Committee, and Charles Koehler, who stated they would strongly consider resigning from the Equity Committee if appropriate insurance coverage were not obtained, citing their concerns about the risk of lawsuits against committee members. In addition, the Equity Committee proferred the testimony of Mr. Landis that he would resign as a member of the committee in the absence of liability insurance and would so recommend to the other remaining committee members. In support of the committee members' concerns about litigation, the Equity Committee noted that over twenty lawsuits had already been filed against the Debtor's management. Despite invitations from the bankruptcy court, no one at the hearing, including the Trustee, offered any evidence in response to the evidence presented by the Equity Committee on this issue, or cross-examined Mr. Landis regarding his proferred testimony.

As to the third element, based on evidence that the Debtor had $312 million in net equity and over $52 million in cash or cash equivalents available, the bankruptcy court found that an expenditure of $92,700 to purchase the policy was reasonable under the circumstances.

Thus, after making a preliminary determination that the Equity Committee served an important purpose in this large and complex chapter 11 case, the bankruptcy court found that the expenditure of $92,700 to purchase an insurance policy for Equity Committee members was both necessary to the performance of committee duties and reasonable, and therefore satisfied the requirements of section 503(b)(3)(F) of the Code.[5] After delivering its ruling, the bankruptcy court was careful to emphasize that it was not announcing a broad principle of law regarding the reimbursement of insurance policy premiums under section 503(b)(3)(F). Rather, the court explained that its decision was based entirely on the specific evidence in this "rare" case.

The Trustee argues that the bankruptcy court erred in concluding the insurance premium was an expense necessary to the performance of committee duties.[6] He argues that "in light of other facts," the

5. The bankruptcy court denied relief to the Creditors' Committee, noting there was no evidence that a similar insurance policy was necessary to the performance of Creditors' Committee duties.

6. Whether the policy premium was an "actual" expense is not at issue in this appeal.

Equity Committee failed to carry its burden of showing necessity. The Trustee points to the bankruptcy court's "failure to recognize that resignations from committees are commonplace in large reorganization cases and that the United States Trustee routinely amends the appointment and adds additional members to a committee," and argues there was no evidence that resigning members could not be replaced in the absence of insurance coverage.

As noted above, at the hearing on the motion to approve the stipulation, the bankruptcy court invited the Trustee and others to present evidence in response to the evidence presented by the Equity Committee. The Trustee did not take this opportunity to indicate that he would remedy the threatened resignations by soliciting new members for the Equity Committee. In the absence of evidence from the Trustee, the individual charged with soliciting and appointing members of an official equity committee, 11 U.S.C. § 1102(a)(2), that he would replace resigning committee members, there is no reason for the bankruptcy judge to assume that he would have done so. The mere fact that the Trustee has the power to appoint and solicit new committee members did not preclude a finding by the bankruptcy judge that the insurance premium was an expense necessary to the performance of the Equity Committee's statutory duties.

The evidence presented showed that the absence of liability insurance for Equity Committee members would likely result in the committee being left with only two members, and possibly result in the dissolution of the committee. There was no evidence that the Trustee intended to solicit new committee members to replace those that resigned. The bankruptcy judge noted the particular importance of a committee of equity security holders in this large and complex chapter 11 case due to the significant investment in the Debtor by a large body of shareholders who could not effectively participate in the case without such a committee. Based on this evidence, and the bankruptcy judge's determination regarding the importance of the Equity Committee to the reorganization process, this court cannot say that the bankruptcy judge abused his discretion in finding that the cost of obtaining the insurance policy was an actual and necessary administrative expense allowed under section 503(b)(3)(F).

### III. *Conclusion*

For the foregoing reasons, the court shall AFFIRM the Order of the bankruptcy court.